RECEIPT # ___5620___
AMOUNT $ ___150___
SUMMONS ISSUED ___Y-4___
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK.___M___
DATE___5-21-04___

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Plaintiff A, Plaintiff B,<br>Plaintiff JAN, Chun Pey, and<br>Others Similarly Situated, )<br>)<br>)<br>) | |
| **Plaintiffs,** ) | **Case Number:** |
| ) | |
| **v.** ) | **Civil Tort Liability Claim** |
| ) | |
| WANG, Taihua, Communist Party ) | ~~MAGISTRATE JUDGE~~ Dein |
| Secretary of Anhui Province, and ) | |
| formerly Governor of Anhui Province ) | |
| of the People's Repulic of China, ) | **Jury Trial Requested** |
| ) | |
| **Defendant.** ) | |

# 04 CV 11022 EFH

## CLASS ACTION
## COMPLAINT

Plaintiff A, Plaintiff B, Plaintiff JAN, Chun Pey, appearing Pro Se, on behalf of themselves and others in the designated class of injured parties similarly situated, complain and allege as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil action for a declaratory judgment and for compensatory and punitive damages for torts committed in violation of international law and the domestic Constitution and laws of the People's Republic of China. This complaint is instituted pursuant to specific statutory authorization, namely the Alien Tort Claims Act (28 U.S.C. section 1350) and the Torture Victims Protection Act (106 Stat. 73 (1992)), as detailed below. Plaintiffs in this action

1

include the immediate family members of two individually identified residents of the People's

Republic of China, one individually identified resident of Republic of China, and refugees from

People's Republic of China now living in different nations around the world, including the

United States, whose immediate family members or themselves were subjected to torture and

other major human rights abuses as residents of China, as well as other past and current residents

and citizens of the People's Republic of China, together with their immediately affected family

members, and all others who are similarly situated or affected. Plaintiffs include the family

members and personal representatives of the individuals subjected to torture in a labor camp

facility supervised by the Defendant, who were executed as a result of the torture. All these

Plaintiffs are practitioners of the Falun Gong spiritual movement who, while residents or visitors

of the People's Republic of China and thereby subject to the jurisdiction and authority of the

Defendant in his capacities as Governor of Anhui Province and supervisor in charge of the

Female Labor Reeducation Camp and mental hospitals located in Anhui Province, have suffered,

and been threatened with, the most severe forms of persecution and abuse violating their

fundamental human rights, at the hands of, and with the concurrence, support and supervision of

the named Defendant acting under color of law, in concert with other officials at the highest

levels of the national government of the People's Republic of China and its ruling Central

Committee of the Chinese Communist Party. These violations include, but are not limited to

torture, genocide, kidnapping, extrajudicial killing, arbitrary detention, and denial of the rights to

freely exercise religious and spiritual beliefs, to speak freely, to associate, to assemble peacefully,

and to express one's views freely.

2

2. This action is instituted against Defendant WANG Taihua, presently serving, since January 2000, as Anhui Provincial Communist Party Secretary of the People's Republic of China, who served from February 1999 to January 2000 as Governor of Anhui Province. The Defendant, acting under color of law, played a major role in seeking to suppress the Falun Gong spiritual movement through a consistent and thoroughgoing policy, and an extensively and brutally applied pattern and practice, of arbitrarily arresting, kidnapping, detaining, assaulting, torturing and sometimes executing Falun Gong practitioners, with the purpose of intimidating, punishing and coercing them so as to force them to relinquish their spiritual beliefs and practices, and their association with the Falun Gong movement. Specifically, acting as chief official of Anhui Province, and overseer of the Female Labor Reeducation Camp located in Anhui Province, with principal authority to control and secure the suppression and termination of the Falun Gong movement in Anhui Province of China, Defendant WANG planned and carried out a sustained and deliberate set of policies and actions that resulted in the arbitrary and unlawful arrest, kidnapping, detention, persecution, and in some cases execution, of the Plaintiffs, and/or other members of the Plaintiffs' class. Defendant WANG played a critical role in seeking the violent suppression of the Falun Gong movement and its members in China in general, and in Anhui Province in particular (which he supervised), through a determined policy of arbitrarily arresting, kidnapping, detaining, torturing and arbitrarily executing members of the Falun Gong movement who refused to renounce their practice of Falun Gong, and their association with the movement, or who demonstrated publicly against these acts of repression. The Anhui Provincial Female Reeducation Camp, which Defendant WANG supervised during the period of his office

as Governor of Anhui Province from February, 1999 through January 2000 and as Anhui

Provincial Communist Party Secretary from January 2000 to present, played a critical role in this

process, as one of the primary facilities where the abusive practices that were a regular part of the

campaign of persecution against Falun Gong, including torture and arbitrary execution, took

place. During that period of time, at least hundreds of Falun Gong practitioners were arbitrarily

detained in Anhui Provincial Female Reeducation Camp, and other labor camps and mental

hospitals located in Anhui Province, with a substantial number being executed as a result of

torture that was inflicted upon them as part of the campaign of intimidation and punishment that

Defendant WANG participated in and helped to design, supervise and carry out.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the claims brought by Plaintiffs by virtue of 28 U.S.C.

section 1350, incorporating provisions of the Alien Tort Claims Act and the Torture Victims

Protection Act, which provide for federal jurisdiction and a cause of action "for any civil action

by an alien for a tort only, committed in violation of the law of nations or a treaty of the United

States," as well as for acts of torture committed abroad against either U.S. citizens or citizens of

other nations.

4. In this case, the actions of the Defendant and those with whom he conspired and

supported, constituted violations of some of the most deeply held and universally acknowledged

human rights that are enshrined in a number of widely ratified international treaties that the

United States has ratified, as well as being firmly accepted parts of customary international law.

4

These include, but not limited to, the right to not be arbitrarily arrested, imprisoned and deprived of life; the right to not be subjected to torture and genocide; the right to hold and express views and beliefs freely and without interference; the right to liberty and security of the person; and the right to associate with others and to practice religious and spiritual beliefs without restriction. The exercise by the Plaintiffs of these internationally recognized human rights, enshrined in both treaties ratified by the U.S., and in customary international law, and universally recognized as part of the law of nations, has been seriously and maliciously abridged by the policies and actions of the Defendant and his co-conspirators acting under color of law. Among the specific human rights treaty standards violated by the Defendant are those incorporated in the Convention Against Torture, the Covenant on Civil and Political Rights, the Genocide Convention, and the United Nations Charter. Many of these same standards also are embodied in customary international law as articulated in the Universal Declaration of Human Rights. Each of these standards, and how they have been violated by the actions of the Defendant and his co-conspirators to the detriment and injury of the Plaintiffs, is described and explained in the text of the complaint, below, beginning with paragraph 23. These violations of international law, together with injuries inflicted upon the alien Plaintiffs as a result of these violations, place this legal action within the parameters of the jurisdictional standards spelled out in 28 U.S.C. section 1350 embodying the provisions of the Alien Tort Claims Act and the Torture Victims Protection Act.

5. The fact that the Defendant is not a citizen nor permanent resident of the United States, but is in this country only as a temporary visitor, does not deprive the Court of

jurisdiction, since the very nature of the Alien Tort Claims Act and Torture Victims Protection Act provisions authorizing this type of civil action in federal court recognizes that many defendants or potential defendants in these cases, as aliens committing torts abroad that involve violations of international law, will be in the United States and subject to the jurisdiction of our federal courts only on a temporary basis.

6.  Venue is properly vested in the Federal District Court for the District of Massachusetts pursuant to the requirements of 28 U.S.C. sections 1391(b) and (d) as a location within the United States where the Defendant is personally located during his current visit to this country, and can be personally served with process regarding the initiation of this lawsuit pursuant to the requirements of Rule 4 (c)(1) and (e) of the Federal Rules of Civil Procedure.

## III. PARTIES

### A.  *Plaintiffs*

7.  Plaintiffs represent a designated class of Falun Gong practitioners who have resided in the past, who are currently residing in, who have visited in the past, or who are currently visiting the Peoples' Republic of China, and have been subjected to various forms of persecution and abuse, amounting to serious violations of their human rights, as a result of the policies and actions of the Defendant and other high-level government officials with whom he has conspired, acting under color of law, aimed at intimidating or punishing the Plaintiffs for their Falun Gong beliefs and practices, preventing them from engaging in these practices, and eliminating the Falun Gong as a spiritual movement.

6

8. Alphabetic designations have been used to substitute for the specific identities of two individually identified plaintiffs in order to protect them and their families, some of whom remain within the jurisdiction of China, from the most serious forms of reprisal, including arrest, torture and execution. For these Plaintiffs, a very real and substantial risk exists that the Government of China would seek to inflict punishment or coercion on the Plaintiffs and/or their families as a result of their filing this lawsuit and bringing public exposure and criticism to the government's policies and practices regarding the intimidation of Falun Gong practitioners, and the government's efforts to terminate the Falun Gong movement. For this reason, the identities of two individual Plaintiffs have been withheld from this pleading to be served on the Defendant. A Motion accompanies the complaint asking the Court to authorize withholding the specific identities of the individual Plaintiffs in the text of the complaint. Counsel for Plaintiffs would be pleased to provide the Court with any additional identifying information that may be needed regarding the Plaintiffs, including copies of the Plaintiffs' notarized and witnessed statements and affidavits, so long as the identities of the Plaintiffs are not made known to the Defendant, or made accessible in any other way to the Government of the Peoples' Republic of China, since this would place the Plaintiffs and their families at extreme risk for the most serious forms of reprisals, including arbitrary arrest, kidnapping, torture and execution.

9. Plaintiff A is a 41-year old woman currently residing in Japan. She is bringing this complaint on behalf of herself and her sister. Plaintiff A's sister was an associate professor of civil engineering in China. In October, 2001, Plaintiff A's sister was kidnapped from her home and was sent to the Female Labor Reeducation Camp of Anhui Province. To resist the illegal

7

persecution, torture and confinement based solely on her belief and practice of Falun Gong,

Plaintiff A's sister started a hunger strike, without taking food nor water. After ten days, she was

sent to a mental hospital. Her husband was coerced and forced to sign a hospital admission form.

Plaintiff A's sister was told that she would be kept in the mental hospital for as long as she does

not give up the practice of Falun Gong. She was forced to wear special hospital clothes for

mental patients, which she wore for a whole year. For nearly ten months in the mental hospital,

she was forced to take or be injected with drugs that damage the central nervous system by the

so-called doctors and nurses. The hospital forced her to take handful of unknown pills each time.

Later, she was also given an injection and an IV infusion. As a result of all the injections,

infusion and pills, her movements became sluggish. Her mind was foggy. Her menstrual period

had stopped. Her reactions were slow and she had difficulty sitting or standing. When she

refused to take the medication, five or six nurses would drag and pull her around.

In addition to severely medicating her, the hospital also forced her to undergo electro

shock therapy. Five or six nurses and assistant nurses tied her down on the bed for several days,

using five cloth strips to immobilize her, with her arms and legs stretched out wide. When they

gave her daily electro shock therapy, the electric needles were inserted into her temples. The

nerves of her whole body would seize and she was in extreme pain. All the pores of her body

were in agony and she felt as if her hair were being pulled off her scalp. When they applied

electro shock, she was tied to the bed, spread eagle. The electric shocks were much higher in

voltage than electric needles. When shocked, her nerves twitched; horror scenes in blue and

green colors appeared in her head and she could hear a strange, hoarse sound, like wind. They

8

used a microphone-shaped black device to administer the electric shocks. The hospital threatened her with increased voltage when she did not cooperate.

Plaintiff A's sister was often force-fed. She would be tied flat to the bed, immobilized with her arms and legs stretched out wide while a nurse would force-fed her with medicine and food. If she resisted, the nurses would pull her hair and slap her face. They would also subject her to degradation and ridicule. For instance, they would wrap the end of the force-feeding tube with gauze and tie the tube to her hair in front. The tube would hang in front of her face. She was made to look like an insane person. When force feeding, they often grip her lower jaw and insert the tube into her nose. At one point, she was fed through the nose twice daily for nearly 20 days. Her nasal cavity was lacerated, bleeding and swollen, which caused more pain when the tubes were inserted. A doctor in the hospital told Plaintiff A's sister that she would leave the tube in her for a long time and the rubber tube can become toxic and cause cancer. As it became harder and harder to insert the tube through her injured nose they had to switch to infusion. However, her veins had become so thin that every time they gave her an infusion it would take at least five or six tries to find the vein, sometimes seven or eight tries. Her arms and the back of her hands were covered with bruises.

Plaintiff A's sister was tied up about 30 to 40 times during the year she was in the hospital. Sometimes it lasted 20 minutes and other times it would last more than two days. Her hands were swollen from tying and the swelling would last two or three days. She was told that she was under direct control of higher authorities, who issued orders for the doctor in the hospital to give her the medicine and the doses were also decided by the authorities. The orders from the

9

authorities was that she must take them. The Falun Gong Control Office (also known as "610 Office") of Anhui Province gave direct orders regarding the torture, mental abuses, incarceration, among others, of Plaintiff A's sister.

10. Plaintiff B is a male who currently resides in the United States. He is bringing this complaint on behalf of himself and his sister, who currently is being jailed in Anhui. Plaintiff B' sister is almost 60 years old, married with a daughter. She was a technician of 30 years.

In January 2000, Plaintiff B' sister was arrested on her way to Beijing making appeal to government for Falun Gong. Because of her appeal, she was detained and later sentenced for one year in jail. During her time in jail, she was once shackled with heavy chains with several other female practitioners for 9 consecutive days because she wanted to practice Falun Gong meditation. She was released after serving one-year sentence. But she lost her job and pension and health care benefit as she refused to give up her faith in Falun Gong.

In October 2002, Plaintiff B' sister was abducted and detained while she was at a family event. She was tied up in a chair for more than 30 consecutive days and was forced to give information on other Falun Gong practitioners.

She was later sentenced for more than three years because she was accused of distributing VCDs that contained information of Falun Gong. She was told that if she gave up the practice she could be released right away. She once again refused to renounce her practice of Falun Gong. She has been jailed in a prison in Anhui Province ever since.

The people involved in her case and participated in the persecution are from the "610 Office" of Hefei City and the "610 Office" of Anhui Province.

11. Plaintiff JAN Chun Pey is a 43-year-old female born in Taiwan. She is an Instrument Control Engineer and has a 13 year old daughter. Plaintiff JAN is bringing this complaint on behalf of herself and her daughter. They have been practicing Falun Gong since May, 2000.

At 10 am February 8th 2002, Plaintiff JAN and her daughter flew from Taipei and planned to arrive at Hefei City, Anhui Province before the Chinese Lunar New Year. At around 6pm, before passing the customs at the Hefei Airport, Plaintiff JAN and her daughter were dragged out of the line by a police in uniform. The police kept their Certificates of Taiwanese Compatriots and took them to a secluded room in the airport and started searching and interrogating them. They were not allowed to call Taiwan, and her cell phone was taken away. The police took out properties from her luggage and scattered the cassette player, Falun Dafa books and bookmarks on the floor and took photos as evidence. In the room there were more than ten police surrounding them. Her daughter stuck with her, and was very scared and frightened. The police asked her loudly, "Who are you going to contact here? How long will you stay? Who told you to come here? Where to go? Have you been here before? What are the names of your relatives? What do they do?" Because they arrived at the airport with legal visa as Taiwanese compatriots, and they were not criminals at large, nor have they committed any crimes, it was unreasonable for the police to interrogate and treat them like criminals. Seeing that they did not answer, the police threatened to hurt Plaintiff JAN and separate her daughter from her. The police forcibly took Plaintiff JAN out of the room and the daughter alone in the room with more than ten other police. The daughter was frightened into crying, but the police continued to intimidate her and interrogated her with questions like "Are you also practicing Falun Gong?" Concerned about her daughter, Plaintiff JAN struggled to throw herself onto the door requesting the

police to open the door. The police then allowed her daughter and her to stay together. Under the threat and intimidation by the police, Plaintiff JAN was forced to answer the questions, and admitted she was a Falun Gong practitioner who wanted to spend the Chinese New Year in her hometown. After the police took photos of them, took their fingerprints and asked the questions, immediately a second group of people wearing black leather coat, claiming themselves as custom personnel, came in and interrogated Plaintiff JAN and her daughter. They asked almost the same question. They again searched their luggage until midnight. Plaintiff JAN and her daughter could not connect with anyone outside. They did not know if the police would kill them. Plaintiff JAN and her daughter felt extremely helpless and distressed.

After several hours of interrogation, a plain clothed police who wore suit came in and took Plaintiff JAN's daughter and her into an unmarked van. Besides them, there were four other plain clothed police in the van. After driving for about thirty minutes, the van arrived at an abandoned building. Plaintiff JAN and her daughter were brought to a living room. The police then started the same interrogation repeatedly in an attempt to obtain evidence to accuse them with some crime. The interrogation lasted until 3:00 am next morning. It had been nine hours since Plaintiff JAN and her daughter got off the flight and been interrogated. Plaintiff JAN and her daughter were very frightened. During the nine hours, they were not provided with any food nor were they allowed to rest. When they used the toilet, the police purposely kept the door open to humiliate them. Being unable to contact her family in Taiwan, Plaintiff JAN feared that the worst could happen and almost collapsed. After a sleepless night, at 7:00 am next morning on Feb 9th, police once again came to interrogate them. This time, two tall plain clothed police came and showed Plaintiff JAN their

12

identification and told them that they were from the "610" office. The police threatened them with sending them to a labor camp or prison if they did not cooperate. When Plaintiff JAN asked them what kind of crime did she commit, the police could not give any specific answer, just said that they were carrying the order from authority and Plaintiff JAN and her daughter had to obey the orders. The police then asked questions regarding Plaintiff JAN and her daughter's relatives in China, why Plaintiff JAN and her daughter often went to other countries and why they attended Falun Dafa experience sharing conference. Plaintiff JAN learned that the police had read all the letters she sent to her relatives in China and they had been keeping an eye on her.

The interrogation lasted until noon. One police told Plaintiff JAN to accept the so-called "order" from the top and then showed a scrap paper sentencing her to "lifelong surveillance". Plaintiff JAN was asked to agree and sign on the paper. She refused and asked this man who he was, which law the sentence was based on, and how could a court order be handwritten and the sentence be so arbitrary? In the afternoon, a group of men in plain clothes started to pressure Plaintiff JAN to sign the so-called document and warned of severe consequence if she refused. She was worried about the well being of her daughter and agreed to sign the so-called sentencing order. She felt tremendous emotional pain for being coerced to admit something she did not do and did not know what was the next abuse she had to suffer. Officials from 610 Office kept reporting their superiors in another room after she answered each question and forced her to sign and fingerprint the document. Officials threatened that her relatives would be in danger if she dared to hold a press conference after returning back to Taiwan. After hours of continued interrogation without food, bath and sleep, Plaintiff JAN's daughter was so distraught that she could not make any sound. Plaintiff JAN was in distress to see

13

the mental torture that her daughter had been through.

In the afternoon of February 10, the plain clothes brought Plaintiff JAN and her daughter to Nanjing airport from HeFei City and they arrived back to Taipei that evening. After returning to Taipei's home, Plaintiff JAN was informed by her sister-in-law in HeFei City that her home phone was bugged and she was also interrogated by 610 Office about her knowledge of Plaintiff JAN for 4 hours. The police and 610 Office exerted high on the relatives in China. Plaintiff JAN and her daughter still have not recovered from the horrible experience. In her young age, Plaintiff JAN's daughter suffered a serious psychological trauma. Even now the daughter still refuses to discuss what had happened to the family.

12. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the individual plaintiffs identified above are joined in this complaint by other members of the class of adversely affected individuals whom they represent, namely past or present residents of Anhui Province of the Peoples' Republic of China, individuals incarcerated and tortured in Anhui Provincial Female Labor Reeducation Camp, individuals who have visited Anhui Province, and individuals kept, abused, and tortured in mental hospitals in Anhui Province during the periods that the Defendant exercised supervisory functions over Anhui Province and the Female Labor Reeducation Camp facility in that jurisdiction. Members of the Plaintiff Class are practitioners or believers in the Falun Gong spiritual movement, who, because of those beliefs and associations have either been subjected to grave abuses of their internationally recognized human rights (including, but not limited to, arbitrary arrest, kidnapping, imprisonment, torture, genocide, and deprivation of life, liberty, or security of the person), or have been threatened with such violations, through the

14

actions of the Defendant and other high level government officials with whom he has conspired to carry out these acts and objectives.

13. Other members of the class of adversely affected individuals have been joined through this class action, pursuant to the requirements of Rule 23(a), because the class is too numerous to permit joinder of all members, there are questions of law and fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives parties will fairly and adequately protect the interests of the class. Moreover, pursuant to the requirements of Rule 23(b), separate actions would create a risk of inconsistent adjudications affecting the interests of all members of the class, and the nature of the circumstances is such that there are common questions of law and fact that predominate over any questions affecting only individual members, making a class action the appropriate method for adjudicating the issues presented. In addition, the physical location and circumstances of many members of the class, namely their being located in China, and the fact that many of them currently are being held in arbitrary and unlawful detention in China, as well as the threat to their and their families' safety associated with identifying them as individual plaintiffs, make their joinder as individual and named plaintiffs impractical if not impossible.

### B. Defendant

14. Defendant WANG Taihua is a citizen and resident of the Peoples' Republic of China, and currently serves as Anhui Provincial Communist Party Secretary of the People's Republic of China. Defendant WANG currently serves as the Chairman of the Standing Committee of Anhui Provincial People's Congress. From February, 1999 until January, 2000, when he was appointed

to his current position as the Communist Party Secretary, Defendant WANG served as Governor of Anhui Province of the People's Republic of China, where the Anhui Provincial Female Labor Reeducation Camp and other Labor Camps and Mental Hospitals used to house Falun Gong practitioners are located, and where some of the most brutal human rights violations aimed at suppression and elimination of Falun Gong have taken place. In these capacities Defendant WANG played a pivotal role in the campaign of persecution directed towards Falun Gong practitioners, in his capacity as Governor of Anhui Province, the Provincial Communist Party Secretary, the Chairman of the Standing Committee, and principal official supervising the operation of the Anhui Provincial Female Labor Reeducation Camp facility in that jurisdiction.

15. As Governor of Anhui Province, and in his positions as Secretary of the Chinese Communist Party Committee for Anhui Province and Chairman of the Standing Committee, key aspects of governmental operations were under the Defendant's direct supervision and control, including the operation of the detention facilities, labor camps, mental hospitals, and the actions of police and prison officials. As Governor he exercised general and complete supervisory power and authority over all governmental policies and practices for Anhui Province, including law enforcement and prison management questions, and all policies and practices associated with the campaign of persecution against the Falun Gong spiritual movement and its practitioners. He had absolute power to set policy guidelines, design and implement programs, and supervise the carrying out of the campaign of persecution against Falun Gong, including supervisory authority over the treatment of all Falun Gong practitioners imprisoned at Anhui Provincial Female Labor Reeducation Camp, and other similar labor camps and mental hospitals in the Province. He was

16

directly and ultimately responsible for the abuses of arbitrary detention, abduction, torture and execution as a result of torture, that took place under his supervision in Anhui Province and at the Anhui Provincial Female Labor Reeducation Camp and other similar labor camps within the jurisdiction. He improperly and illegally exercised the authority under his mandate to appoint, discipline and remove those government officials who did not comply with the directives of his office. The way the Defendant exercised his authority placed him in the position of violating the Constitution and national law of the PRC in pursuit of the campaign of repression against Falun Gong. He wielded his power to investigate and criminally indict any and all officials of government, whatever their capacity, who failed to comply with the directives of his office, so as to violate the Constitutional and legal standards of China that might interfere with the carrying out of the campaign of repression against members of the Falun Gong spiritual movement.

16. The Defendant, as Governor of Anhui Province, and as the highest level local official ultimately responsible for the supervision and operation of Anhui Provincial Female Labor Reeducation Camp, directed the activities of any and all government officials, bureaus and units within the jurisdiction of Anhui Province who were engaged in the effort to control, suppress and eradicate Falun Gong in that jurisdiction. The decisions to arrest, kidnap, prosecute, put on trial and indefinitely detain and torture Falun Gong practitioners in Anhui Province were made by the Defendant and subject to his supervision and control. In carrying out these actions, the Defendant regularly abrogated the duties and responsibilities imposed under the Chinese Constitution and statutory requirements, and violated the domestic laws of China.

17

## III.  GENERAL STATEMENT OF FACTS

17.    On June 10, 1999, Jiang Zemin, the former President of China, established and authorized the operation of the Falun Gong Control Office, a subdivision of the Central Committee of the Chinese Communist Party.  The Falun Gong Control Office is also referred to as "Office 610" to commemorate the date of its official creation (June 10, 1999).  The Falun Gong spiritual movement was and is seen as a potential threat by Jiang Zemin and his regime because of the strong support that it has been able to generate among its practitioners and the society in general, and as a spiritual and social movement that could draw support away from Jiang Zemin personally and his Communist regime.

18.  Since that time, on the national level it is estimated from various reliable sources that over 100,000 practitioners have been arbitrarily and unlawfully arrested and detained in prison facilities simply because of their beliefs, associations and activities related to the Falun Gong spiritual movement.  It is estimated that more than 500 of these detainees have been sentenced to prison terms of up to 18 years, with 1,000 more improperly assigned to mental hospitals to deal with their spiritual "addiction," a practice of using involuntary medical treatment for political purposes unrelated to medical needs that is widely condemned by the international medical community, and that violates specific provisions of international human rights treaties.  Over 20,000 are estimated from reliable sources to have been illegally sent to prison labor camps without trial.  At least 361 deaths of detainees while in the custody of law enforcement or prison personnel through the infliction of torture are estimated to have taken place.  The United States Department of State Annual Report on International Religious Freedom

for 2001 confirms reports of over 100 such deaths of Falun Gong practitioners while in detention and subject to the authority of police and prison officials, people who were arrested and were being held and tortured solely because of their spiritual and social support for the Falun Gong movement.

19.    Anhui Province is known to be one of the most repressive and abusive jurisdictions in China as regards its arrest and treatment of Falun Gong practitioners. Since former President Jiang Zemin's order banning the Falun Gong movement and calling for suppression of their practitioners issued on July 20, 1999, a significant number of Falun Gong practitioners have died from torture inflicted in labor camps and detention centers in Anhui Province. Many of these deaths and executions as a result of torture have been confirmed by the U.S. Department of State in its annual country reports on human rights, and its annual reports on international religious persecution. These are the two highest death tolls of Falun Gong detainees of any of the Provinces in China. Anhui Provincial Female Labor Reeducation Camp imprisons at least 100 female Falun Gong practitioners in four different divisions. This Labor Camp is administered as a concentration camp. This Labor Camp built another two lines of small cells in July 2000. Each cell is just big enough for a person to stand and lie down. In the hottest days during the summer, many Falun Gong practitioners were locked in windowless small chambers (or cells) for practicing the Falun Gong exercises or for participating in hunger strikes. The prison guards would tie the practitioners' arms behind their backs and left them to the hungry mosquitoes in the small chambers. The bumps would be so numerous that the individual bumps would form large, irregular bumps all over the body. At least one practitioner was tortured to death. Family

19

members discovered that her body had visible blood stains on her head, nose, mouth and ear areas. There were bruises on her face and her neck was wrapped with bandages. Officials ordered that this practitioner's body be immediately cremated. When the body was cremated, a large group of police surrounded the crematory so as to block anyone from viewing the body closely. Since Jiang Zemin had given the order that all Falun Gong practitioners who are beaten to death should be regarded as ones who committed suicide, the details relating to this practitioner's death and others similarly situated remain to be investigated.

20.    The extent and seriousness of the persecution and abuse that is targeted against Falun Gong practitioners at both the national level, and in local provinces such as Anhui, have been confirmed and extensively documented by the U.S. Government in its Country Reports on Human Rights Practices, and most especially in its Annual Reports on International Religious Freedom, as well as in reports issued by non-governmental human rights monitoring groups such as Amnesty International and Human Rights Watch. For example, the Annual Report on International Religious Freedom for 2001, issued by the U.S. Department of State in December, 2001, has numerous specific references to the major human rights abuses and violations being committed against Falun Gong practitioners. The report describes the "crack down" against the Falun Gong as tied to the Government of China's effort "to control and regulate religious groups to prevent the rise of groups or sources of authority outside the control of the Government and the Chinese Communist Party. (page 122) It notes that "approximately 100 or more Falun Gong adherents have died in detention since 1999" (p.122); that "many of their bodies reportedly bore signs of severe beatings and/or torture;" that "many thousands of individuals are serving

20

sentences in reeducation-through-labor camps;" that "hundreds of its practitioner have been confined to mental hospitals;" that "there have been numerous credible reports of unrepentant Falun Gong practitioners being confined in psychiatric institutions;" that "police often used excessive force when detaining peaceful Falun Gong protesters, including some who were elderly or who were accompanied by small children;" and that "torture (including by electric shock and by having hands and feet shackled and linked with crossed steel chains)" was widely reported (page 131).   The State Department Report notes that in "September 2000 the Secretary of State designated China a country of particular concern under the International Religious Freedom Act for particularly serious violations of religious freedom," including its treatment of Falun Gong practitioners. (p. 133)

21.   Consistent with the general description and documentation of the serious infringements of human rights that were carried out against Falun Gong practitioners throughout China, each of the Plaintiffs and their families suffered very concrete injuries and losses as a result of the actions of the Defendant, and actions by other officials supervised by the Defendant.

22.   Specifically, Plaintiffs were subjected to arbitrary arrest, abduction, and imprisonment and torture based on their Falun Gong beliefs and practices, and their support for other Falun Gong practitioners, as detailed in the specific causes of action that follow beginning with paragraph 24 of this complaint.

## IV.  SPECIFIC CAUSES OF ACTION CONSTITUTING VIOLATIONS OF HUMAN RIGHTS STANDARDS AND INTERNATIONAL LAW

21

23.  The following specific abuses, constituting torts involving the most serious forms of intentionally inflicted physical and mental suffering and injury, were inflicted upon the plaintiffs as a direct result of the actions of the Defendant and those with whom he acted in concert to carry out the officially sanctioned and mandated policy of persecuting, punishing and intimidating Falun Gong practitioners and repressing their spiritual movement.  Each of these types and forms of abuse also constituted violations of international law embodied in treaties and in customary international practice, binding on both the United States and the Government of the Peoples' Republic of China as indicated and explained in each paragraph below, thereby bringing these torts within the terms of the Alien Tort Claims Act and the Torture Victims Protection Act, as indicated above in paragraphs 3 through 5 of this complaint. They were carried out by the Defendant and the other officials with whom he conspired, acting under color of law, with the specific intent and purpose of abridging and denying the Plaintiffs of their internationally protected human rights, and punishing, intimidating and coercing them for the exercise of those rights, in violation of international law.  Each of the following causes of action should be considered to re-allege and incorporate by reference the allegations set forth above in this Complaint as if fully set forth in the body of each cause of action.

### A.  FIRST CAUSE OF ACTION: TORTURE

24.  Plaintiffs re-allege and incorporate by reference the allegations set forth above in this Complaint, as if fully set forth herein.

25.  The acts inflicted against Plaintiffs were inflicted by and/or at the instigation, under the control and authority, or with the consent or acquiescence of a public official or other person

22

acting in an official capacity or under color of law.

26. The acts and abuses herein described placed Plaintiffs in imminent fear of their lives, and caused them to suffer severe physical and mental pain and suffering. They were deliberately and intentionally inflicted for purposes that included intimidation and punishment, among others.

27. The Convention Against Torture, which came into effect internationally on June 26, 1987, and was ratified by the United States on October 21, 1994 and implemented and given domestic effect by Congress through legislation adopted in 1994 and 1998, and ratified by the Government of China on October 4, 1998, prohibits the intentional infliction of "severe pain or suffering, whether physical or mental" for any purpose, including but not limited to punishment, intimidation or coercion. The infliction of torture was the first type of human rights violation that U.S. courts recognized as authorizing the granting of relief under the Alien Tort Claims Act, in the landmark case of *Filartega v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980). Torture also is prohibited absolutely under other international treaties and under customary international law, including Article 5 of the Universal Declaration of Human Rights, and Article 7 of the International Covenant on Civil and Political Rights. The latter treaty came into effect internationally on March 23, 1976, and was ratified by the U.S. on June 8, 1992, and by the Government of the Peoples' Republic of China on October 5, 1998. The Universal Declaration is not a treaty, but a unanimously adopted resolution of the General Assembly of the United Nations that is widely recognized as an embodiment of fundamental and universally accepted standards of customary international law. The abusive practices imposed upon the Plaintiffs and other Falun Gong practitioners in detention, including, but not limited to, beatings, prolonged

23

periods of restraint and denial of food, water and sleep, as well as the use of instruments of torture, and being forced to witness the torture of others, as described by Plaintiffs in paragraphs 9 through 11 of this complaint, constitute severe pain and suffering under the meaning of the Convention Against Torture and the other international instruments, and thereby constitute violations of international law under the terms of the Alien Tort Claims Act and the Torture Victims Protection Act, 28 U.S.C. section 1350.

28.   As has been extensively documented by the U.S. Department of State in its Country Reports on Human Rights and its Reports on International Religious Persecution, China has engaged in a consistent and widespread pattern and practice of subjecting Falun Gong practitioners to torture while in detention.  Plaintiff A, Plaintiff B and Plaintiff JAN have provided specific examples of how they or their immediate family members have been subjected to torture, and have suffered physical and psychological injuries as a result of these practices that the Defendant and other government officials with whom he has conspired have promoted and supported (see paragraphs 9-11 and 17-23).

## B. SECOND CAUSE OF ACTION:  GENOCIDE

29.  Plaintiffs re-allege and incorporate by reference the allegations set forth above in this Complaint, as if fully set forth herein.

30.  The acts inflicted against Plaintiffs were inflicted by and/or at the instigation, under the control and authority, or with the consent or acquiescence of a public official or other person acting in an official capacity or under color of law.

31. The acts and abuses herein described placed Plaintiffs in imminent fear of their lives,

and caused them to suffer severe physical and mental pain and suffering. They were deliberately and intentionally inflicted for purposes that included intimidation and punishment, among others.

32. Genocide is prohibited under the Convention on the Prevention and Punishment of the Crime of Genocide (referred to as the Genocide Convention), which entered into force internationally on 12 January 1951, and was ratified by the U.S. on November 25, 1988, and by the Peoples' Republic of China on April 18, 1983. Genocide is defined in the Convention as intentional actions taken "to destroy, in whole or in part, a national, ethnical, racial or religious group" through such means as "killing members of the group; causing serious bodily or mental harm to members of the group, and deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part...." (Article II)(a) through (c))  The actions of the Defendant and the other government officials with whom he conspired meet this definition because they consisted of an intentionally inflicted policy and practice, carried out under color of law, of inflicting serious bodily harm, and in a number of cases death while in detention, against members of a spiritual group aimed at punishing, intimidating and coercing them because of their religious and spiritual beliefs, associations and practices, with the ultimate aim of elimination of the Falun Gong spiritual movement and its practitioners.

## C. THIRD CAUSE OF ACTION: DEPRIVATION OF THE RIGHT TO LIFE

33.  Article 6 of the International Covenant on Civil and Political Rights, which came into force internationally on 23 March 1976, and was ratified by the United States on June 8, 1992, and by the Peoples' Republic of China on October 5, 1998, confirms that "Every human being has the inherent right to life" and that "No one shall be arbitrarily deprived of his life."

This same principle is set out in Article 3 of the Universal Declaration of Human Rights, a United Nations' General Assembly Resolution unanimously adopted on 10 December 1948, and now interpreted as the clearest embodiment of the universal standards of human rights enshrined in customary international law. As indicated above, an extraordinarily large number of Falun Gong practitioners, numbering over 100 in slightly over two years according to the U.S. Department of State, have died in detention under conditions that the U.S. Department of State has confirmed were likely linked to the infliction of torture. These executions through torture can be directly attributable to Defendant WANG in his capacity as Governor of Anhui Province, Provincial Communist Party Secretary, Chairman of the Standing Committee of Anhui Provincial People's Congress, and chief supervisory official in charge of the operation of the Anhui Provincial Female Labor Reeducation Camp, other similar labor camps, and mental hospitals in his Province where many of these instances of torture and arbitrary execution as a result of torture took place during the period when Defendant WANG exercised authority over the campaign of persecution in Anhui Province.

### D. FOURTH CAUSE OF ACTION: THE RIGHT TO LIBERTY AND SECURITY OF THE PERSON, AND TO BE FREE OF ARBITRARY ARREST AND IMPRISONMENT

34. The right to liberty and security of the person is guaranteed by Article 3 of the Universal Declaration of Human Rights, and Article 9 of the Covenant on Civil and Political Rights. Article 9 of the Covenant also stipulates that "No one shall be subjected to arbitrary arrest or detention" or "deprived of his liberty" except according to lawful procedures. Also of special relevance to the tort damage complaint that has been brought before this Court by the

26

Plaintiffs, Article 9 stipulates that "Anyone who has been the victim of unlawful arrest or detention shall have an enforceable right of compensation." (Article 9(5))  The U.S. Department of State Report on International Religious Freedom for 2001 confirmed that, "During the period covered by this report ... there were many thousands of cases throughout the year of individuals receiving criminal, administrative, and extrajudicial punishment for practicing Falun Gong, admitting that they believed in Falun Gong, or simply refusing to denounce the organization or its founder," (p. 125) with "as many as 300 practitioners ... sentenced to prison terms of up to 18 years for their involvement in Falun Gong," and "many thousands of individuals are serving sentences in reeducation-through-labor camps." (p. 1313)  The State Department report indicates that between 1998 and 1999, the Law Yearbook of China (an official publication) indicated a dramatic increase in arrests for "disturbing the social order," from 76,500 to over 90,000, with the increase "primarily ... due to the Government's crackdown, begun in mid-1999, on ... groups like Falun Gong...." (p. 129)  The arbitrary arrests and detentions described by the Plaintiffs in this complaint and in their accompanying sworn statements are indicative of the type of arbitrary administration of justice that has been imposed on Falun Gong practitioners, resulting in the arbitrary deprivation of liberty, and often serious injuries and deaths.  Plaintiff A has cited an arrest of her sister for one year based purely on her sister's practice of the principles of Falun Gong, and her sister's subjection to imprisonment and torture while in detention without any judicial proceedings (paragraph 9 of the Complaint).  Plaintiff B also cited two arrests of her sister with the first detention period of one year, and the second still continuing now for more than a year and half, again based solely on her spiritual beliefs, and accompanied by physical and

27

mental torture. Plaintiff JAN indicates that she and her daughter were detained at the airport and arbitrarily sentenced.

### F. SIXTH CAUSE OF ACTION: THE FREEDOM OF THOUGHT, CONSCIENCE AND RELIGION, AND THE FREEDOM TO HOLD OPINIONS WITHOUT INTERFERENCE AND TO ASSOCIATE FREELY.

38. The right to "freedom of thought, conscience and religion," and the right to hold opinions without interference and to associate with others freely, are enshrined in Articles 18, 19 and 20 of the Universal Declaration, and Articles 18, 19 and 22 of the International Covenant on Civil and Political Rights. As enumerated in the preceding sub-paragraphs, and in the U.S. Department of State Reports on International Religious Freedom and Country Reports on Human Rights, these internationally recognized rights and protections have been seriously infringed by the policy and practice banning the Falun Gong, and seeking the repression, punishment and intimidation of their practitioners in order to end the movement. This "harsh" and "unremitting campaign against Falun Gong" has included assigning "many thousands" to "re-education through labor camps" and other "facilities specifically established to 'rehabilitate' practitioners who refuse to recant their belief voluntarily." (p. 129-131, State Dept. Report on International Religious Freedom for 2001). Each of the identified Plaintiffs in this case have indicated how their arrest, detention and punishment, including physical and mental, took place because of their practice of Falun Gong beliefs or exercises, and their refusal to give up these practices.

### G. SEVENTH CAUSE OF ACTION: VIOLATIONS OF THE ABOVE-CITED RIGHTS AND PROTECTIONS AS EMBODIED IN CUSTOMARY INTERNATIONAL LAW

39. Each of the above-cited violations of international treaty-based law also involve the

abridgement and violation of the same rights protections enumerated in sub-sections A through F (above) as embodied in customary international law.  It is well established that the enumeration of these types of universally recognized rights and protections in specific treaties do not remove them from coverage by customary international law, but merely provide an additional treaty-based framework recognizing their internationally protected status.  This distinction, and the additional coverage by international customary law, are important, since they provide a basis for requiring compliance with universally accepted human rights standards by all nations and governments, whether or not they have specifically ratified individual human rights treaties.  For example, in *Filartega v. Pena-Irilla*, 630 F.2d 876 (2d Cir. 1980), U.S. courts found it possible to apply the prohibitions against torture as a basis for an Alien Tort Claims Act complaint based on customary international law as well as the treaties embodying the same anti-torture standards.

## V.  PRAYER FOR RELIEF

40.    Based on the above facts, jurisdictional claims and legal arguments, Plaintiffs, on behalf of themselves and others similarly situated, ask for judgment against the Defendant as follows:

1. For compensatory damages according to and consistent with the injuries described, the extent of which will be demonstrated according to evidence to be presented;

2. For punitive and exemplary damages according to and consistent with the extraordinary and gross nature of the Defendant's conduct and the injuries it produced, the extent of which will be demonstrated according to evidence to be presented;

29

3. For a declaratory judgment confirming the unlawful nature of the pattern and practice of gross violations of human rights that have taken place, and that the Defendant has played a material part in carrying out, in concert with other high-level officials in China, resulting in serious and permanent injury of the Plaintiffs;

4. For such other relief as the Court may deem suitable and necessary; and,

5. For reasonable attorneys' fees and costs associated with these proceedings, including service of process and providing proof of the tort actions committed and the injuries they have produced.

## DEMAND FOR JURY TRIAL

Pursuant to the requirements of Rule 38(b) of the Federal Rules of Civil Procedure, a jury trial is demanded for this case.

Respectfully Submitted this 21st day of May, 2004

By:

JANG JEI JAW
Attorney in Fact
16 Flintlock Road
Lexington, MA 02420
781-862-4515

On behalf of
Plaintiff A, Plaintiff B, and
Plaintiff JAN, Chun Pey

30

PRO SE